**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**YVETTE M. LaPLANTE**
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jul 24 2014, 8:44 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

LARRY A. JONES,                          )
                                         )
    Appellant-Defendant,          )
                                         )
      vs.                    )    No. 82A04-1312-CR-627
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.           )

### APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Wayne S. Trockman, Judge
Cause No. 82D02-1105-FA-543

**July 24, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Larry A. Jones appeals his conviction for class A felony dealing in cocaine. The sole restated issue for our review is whether the trial court abused its discretion when it admitted the cocaine evidence obtained during a patdown search of Jones's person and during the subsequent search of the apartment in which he had been residing. Finding no abuse of discretion, we affirm.

**Facts and Procedural History**

In 1993, Jones was convicted of the attempted murder of Shareka Bentley, the mother of his three children. Jones shot Bentley and, as a result, Bentley became paralyzed and is now confined to a wheelchair. After Jones was released from prison and placed on parole, he and Bentley married in June 2010. In May 2011, Bentley was renting an apartment in Vanderburgh County and Jones was living there with her at least part-time. On May 20, 2011, Bentley called 911 to report a parole violation by Jones. Specifically, Bentley reported that Jones had a handgun in the apartment and that he was also in possession of narcotics.

Evansville Police Officer Hank Wheeler was dispatched to the scene. When arriving at the apartment, Officer Wheeler observed two individuals sitting on the front porch. He then drove to the alley behind the building. Officer Wheeler observed a female exit the back of the apartment, followed by Jones. Officer Wheeler identified himself to Jones and asked if he could speak with him. Jones "cordially" obliged and began walking toward Officer

Wheeler. Supp. Tr. at 8.[1] However, as he approached Officer Wheeler, Jones began reaching toward his pocket. Officer Wheeler asked Jones not to reach into his pocket and then asked Jones if he could do a patdown search. Jones said, "Yes go ahead." *Id*. Officer Wheeler could see a bulge in Jones's front pants-pocket. During the patdown search, Officer Wheeler felt the bulge and believed it to be a large amount of cash. Officer Wheeler asked Jones if he could reach into his pocket and Jones consented by saying, "Sure go ahead." *Id*. at 9. Officer Wheeler pulled out a roll of cash which was wrapped around a clear baggie of a large off-white rock-like substance that Officer Wheeler believed to be cocaine. Officer Wheeler handcuffed Jones and gave him his *Miranda* warnings. The substance was later determined to be 19.6 grams of cocaine and the cash from Jones's pocket totaled $1980.

Based upon Officer Wheeler's discovery and statements from Bentley and other family members regarding the presence of a handgun and additional narcotics in the apartment, officers obtained and executed a search warrant for the apartment. The officers searched the bedroom and discovered Jones's identification attached to his keys sitting on the bed. They found a baggie of individually wrapped rocks of cocaine under pillows on the bed. They also found another bag of cocaine and a handgun between the mattress and box spring. The cocaine found in the apartment totaled 275.7 grams.

The State charged Jones with class A felony dealing in cocaine and class B felony unlawful possession of a firearm by a serious violent felon. Jones filed a motion for

---

[1] While we will cite to the jury trial transcript as "Tr.," we will refer to the separately paginated transcript of the motion to suppress hearing as "Supp. Tr."

severance of the counts and a motion to suppress evidence obtained during the patdown search of his person as well as evidence obtained during the search of the residence. The trial court later granted the motion for severance without objection from the State. Following a suppression hearing on February 13, 2012, the trial court denied Jones's motion to suppress. On September 25, 2013, the jury trial began on Jones's class A felony dealing in cocaine charge. At the conclusion of trial, the jury found Jones guilty. The trial court later sentenced Jones to forty-seven years' imprisonment. This appeal followed.

**Discussion and Decision**

Jones originally challenged the admissibility of the cocaine evidence through a pretrial motion to suppress, which was denied by the trial court. Because he now appeals following a jury trial, the issue before us is whether the trial court abused its discretion in admitting the evidence at trial. *Lindsey v. State*, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009), *trans. denied* (2010). A trial court has broad discretion in ruling on the admission or exclusion of evidence. *Palilonis v. State*, 970 N.E.2d 713, 726 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id.* When reviewing the admissibility of evidence, we do not reweigh evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009). We also defer to the trial court's factual determinations unless clearly erroneous. *Id.* However, we consider "afresh any legal question of the constitutionality of a search or seizure." *Id.*

**Section 1- Consensual Search**

Jones first contends that the trial court abused its discretion when it admitted the evidence obtained during Officer Wheeler's search of his pocket. Although Jones concedes that he consented to the search of his pocket, he argues that his consent was invalid because Officer Wheeler did not provide him with an advisement of his right to the presence and advice of counsel prior to requesting his consent. In *Pirtle v. State*, 263 Ind. 16, 29, 323 N.E.2d 634, 640 (1975), our supreme court held that a person held in police custody is entitled to the presence and advice of counsel prior to consenting to a search and that right, if waived, must be explicitly waived. Therefore, the threshold question when considering *Pirtle* rights is whether the defendant was in custody when he was asked for consent. *See Garcia-Torres v. State*, 949 N.E.2d 1229, 1238 (Ind. 2011).

In determining whether a defendant was in custody when consent was requested, courts consider all circumstances surrounding the encounter. *Meredith*, 906 N.E.2d at 873. "Custody is determined by an objective test: whether reasonable persons under the same circumstances would believe they were in custody or free to leave." *Campos v. State*, 885 N.E.2d 590, 601 (Ind. 2008). "*Pirtle* and its progeny police the line between ordinary investigative detentions and full-blown custodial interrogations by examining the circumstances for objectively overpowering, coercive, or restraining police behavior, such that the facts demonstrate 'a degree associated with a formal arrest.'" *Meredith*, 906 N.E.2d at 873-74 (quoting *Melton v. State*, 705 N.E.2d 564, 566 (Ind. Ct. App. 1999)).

Here, we cannot conclude that Officer Wheeler's request for consent to search Jones's pocket rose to the level of coercive or restraining police behavior required to entitle Jones to the presence and advice of counsel prior to giving consent. The duration of Officer Wheeler's encounter with Jones was incredibly brief and, from all indications, cordial. After being given permission to conduct a patdown search of Jones's person, and then feeling what appeared to be a large amount of cash in Jones's pocket, Officer Wheeler asked for consent to reach into a single pocket. Jones immediately obliged and consented. There is no contention that Officer Wheeler coerced Jones into consenting or that Officer Wheeler engaged in any objectively overpowering behavior prior to requesting consent. Accordingly, Jones was not in custody at the time his consent was requested, and no *Pirtle* advisement was necessary. Under the circumstances, the trial court did not abuse its discretion in admitting evidence obtained during the search of Jones's pocket.

**Section 2 – Search Pursuant to Warrant**

We next address Jones's contention that the trial court abused its discretion in admitting evidence obtained during the search of the apartment because the affidavit upon which the search warrant was based was defective. We disagree with Jones.

"The task of the issuing magistrate when receiving a request for a search warrant is to make a common sense determination, based on the totality of the circumstances, that there is a fair probability that a particular place contains evidence of a crime." *Mitchell v. State*, 745 N.E.2d 775, 784 (Ind. 2001). "Search warrants are presumed valid, and 'where a presumption of the validity of a search warrant exists, the burden is upon the defendant to overturn that

6

presumption.'" *Speer v. State*, 995 N.E.2d 1, 7 (Ind. Ct. App. 2013) (quoting *Jones v. State*, 783 N.E.2d 1132, 1136 (Ind. 2003), *trans. denied* (2004)), *trans. denied*. Specifically, we have explained,

> If a defendant establishes by a preponderance of the evidence that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, … and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."

*Stephenson v. State*, 796 N.E.2d 811, 815 (Ind. Ct. App. 2003) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)), *trans. denied*. "Mistakes and inaccuracies in search warrant affidavits will not 'vitiate the reliability of the affidavits so long as such mistakes were innocently made.'" *Mitchell*, 745 N.E.2d at 785 (quoting *Utley v. State*, 589 N.E.2d 232, 236-37 (Ind. 1992)). The party alleging that a mistake was not innocent must make a substantial showing that the facts were included in reckless disregard for the truth. *Id*.

Here, the search warrant affidavit for the apartment was completed by Evansville Police Detective Jeff Breivogel. Detective Breivogel completed the affidavit based upon information provided to him from Officer Wheeler regarding the cocaine found on Jones's person, as well as ample information from Jones's family members regarding the presence of a handgun and additional cocaine inside the residence. Jones takes issue with the inaccurate statement in the affidavit that, "[d]uring the pat-down the officer felt what he immediately recognized through his training and experience to be narcotics in Jones' pants pocket." Appellant's App. at 165. The record is clear that during the patdown search, Officer Wheeler

recognized the bulge in Jones's pants not as narcotics but rather as a large sum of money, and that Jones subsequently consented to a search of his pocket resulting in the discovery of cocaine.

Despite the inaccurate statement in the affidavit, Jones has not shown by a preponderance of the evidence that the inaccuracy was included knowingly or intentionally or in reckless disregard for the truth. Detective Breivogel testified, "[Officer Wheeler] said that when he patted him down he felt a wad in his pants pocket. To my recollection he told me he automatically thought it was narcotics and that's the information that I used for my search warrant." Tr. at 82-83. Detective Breivogel explained that the resulting misstatement in the affidavit was "an oversight on my part on translation on what was said … when I talked to [Officer Wheeler] briefly before I wrote the affidavit." Supp. Tr. at 49. Contrary to Jones's contention, it appears that the inaccurate statement was innocently made.

Moreover the inaccuracy regarding exactly how Officer Wheeler discovered the cocaine in Jones's pocket, by immediate patdown-feel or consensual search, is insignificant in light of the fact that Officer Wheeler discovered cocaine in Jones's pocket. The relevant facts for probable cause to search the residence were the discovery of cocaine on Jones's person coupled with statements from family members that Jones, a parolee, had a gun hidden and additional narcotics in the residence. Looking at the totality of the evidence contained in the affidavit, the magistrate had a substantial basis for concluding that there was a fair probability that contraband or evidence of a crime would be found in the apartment. As the

8

search warrant was properly granted, the trial court's admission of evidence obtained therefrom was not an abuse of discretion.

Affirmed.

BAKER, J., and BARNES, J., concur.